denced to the world his claim to the property. This property, worth about six or eight hundred dollars when Bartle relinquished it, is now, with its improvements, worth seventy or eighty thousand dollars. Has not Bartle slept upon his rights. In failing for so great a length of time to adopt any means for the legal adjustment of his claim, has he not acquiesced in the adverse claims accompanied with possession.

If the equity set up by the complainant were to be sustained, and not only the title to the property decreed to him, as prayed in his bill, but the rents and profits, would not the principle shake the security of titles to real estate? There would be ground of alarm to holders of such property that some slumbering equity, which had not seen the light for many years, but about which rumors may have been circulated, might be exhibited to the destruction of their title. In no sense could Vattier be considered as the tenant of Bartle. His legal title was adverse from its commencement. He never acknowledged Bartle's title in any form. If he had even entered as his tenant, under the decision of the supreme court in Willison v. Watkins, 3 Pet. [28 U. S.] 44, the assertion of his own right to the property, and a denial by himself and those who claim under him, of the right of Bartle, would give him or them the benefit of the statute of limitations, by proving that Bartle had come within the state.

On the view of the case we have taken, looking at the doubt and uncertainty of the equity set up, at the lapse of time, connected with all the facts of the case, a sense of duty compels us to say that the complainant has failed to establish an equity which would authorize us to vest in him the legal title. The statute would bar the special relief prayed against Vattier. The bill must be dismissed at the costs of the complainant.

This case was taken by appeal to the supreme court, where this decree was affirmed. 9 Pet. [34 U. S.] 405.

## Case No. 11,118.

### Ex parte PIC.

[1 Cranch, C. C. 372.] 1

Circuit Court, District of Columbia. Dec. Term, 1806.

NATURALIZATION—FEME COVERT.

Mrs. Marianne Pic, a feme covert, was admitted to be naturalized.

PIC (BEEDING v.). See Case No. 1,227.
PIC (MAUPIN v.). See Case No. 9,309.

1 [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 11,119.

### PICKELL v. The LOPER.

[Taney, 500.] 1

Circuit Court, D. Maryland. April Term, 1851.

MARITIME LIENS — SUPPLIES — HOME-PORT—RESIDENCE OF OWNER—FOREIGN SERVICE.

1. The port where a vessel is enrolled and licensed is her home-port. The circumstance that her owner or charterer was a citizen of another state, would not make her a foreign vessel at that port.

[Cited, but not followed, in The Albany, Case No. 131.]

2. Supplies furnished at that port must be considered as furnished at her home-port, and will create no lien on the vessel.

[Cited in The George T. Kemp, Case No. 5,-341; The Rapid Transit, 11 Fed. 329.]

3. A vessel whose voyages are confined within the limits of the district where she is enrolled and licensed, although she may connect with vessels or vehicles by which the line of communication is extended to the port of another state, cannot be considered as engaged upon foreign voyages.

4. The furnishing of necessaries to enable her to perform such voyages, is not a maritime contract, and has no connection with commerce upon the high seas, and does not fall within the principles and reasons upon which the maritime law implies a lien.

[Appeal from the district court of the United States for the district of Maryland.]

[This was a libel in rem by John Pickell against the steamboat Loper to recover the value of certain supplies furnished the vessel. From a decree of the district court dismissing the libel for want of jurisdiction (case unreported), libellant appeals.]

John Glenn, for libellant.
Wm. Hamilton, Jr., for respondent.

TANEY, Circuit Justice. This is a proceeding in rem, to charge the steamboat Loper with the value of a quantity of coal furnished by the libellant for the use of the vessel. The case is imperfectly brought up by the record. It appears from the answer, that the Loper was employed under a charter-party, at the time when the coal was furnished; but the charter-party is not produced, nor is it stated for what voyages she was chartered, nor at what port she was enrolled and licensed. But there is enough in the case, notwithstanding these omissions, to enable the court to decide the question of jurisdiction, which will dispose of the whole case.

It is admitted, that the vessel was employed in voyages between Baltimore and Chesapeake City, which is situated at the entrance

1 [Reported by James Mason Campbell, Esq., and here reprinted by permission.]